ANN F. KEARNS, administratrix, *vs.* F. HENRY ELLIS, JR. July 3, 1984. *Negligence,* Doctor. *Medical Malpractice,* Expert witness, Sufficiency of evidence. *Practice, Civil,* Amendment, Expert witness, Instructions to jury.

1. It was the theory of the plaintiff's case on the counts as to which she had a verdict that the failure of the defendant, while out of town, to designate a member of the hospital staff to attend to the plaintiff's decedent (her husband) had contributed to the latter's death. The defendant, Dr. Ellis, is a cardiac-thoracic surgeon who operated on the decedent (Kearns) to place a prosthetic mitral valve in his heart. Fourteen days after surgery, on April 7, 1970, at about 9:30 A.M., and while Dr. Ellis was in Washington, D.C., Kearns took a cataclysmic turn for the worse. By 11:45 A.M., there was a tentative diagnosis that a rupture (dehiscence) of the sutures which held the artificial mitral valve in place had occurred. An alternative, though less likely, diagnosis was that Kearns had suffered a pulmonary embolism. To confirm the diagnosis, a cardiologist, at about 1:00 P.M., performed angiograms which confirmed the impression of disruption or other failure of the artificial mitral valve. The patient went into an operating room at 3:25 P.M. Dr. Ashraf, a thoracic surgeon, performed surgery to repair the mitral valve implant. He observed severe ventricular failure (attributable to the malfunctioning valve) and was unable to restore adequate heart action. Kearns died on the operating table.

A jury returned a verdict for the plaintiff, which the trial judge set aside by acting favorably on the defendant's motion for judgment notwithstanding the verdict. A judgment entered for the defendant. We think the judge acted correctly in accordance with the standards articulated in cases such as *Poirier* v. *Plymouth,* 374 Mass. 206, 212 (1978); *Abraham* v. *Woburn,* 383 Mass. 724, 727 (1981); *O'Shaughnessy* v. *Besse,* 7 Mass. App. Ct. 727, 728-729 (1979); *McCarthy* v. *Hauck,* 15 Mass. App. Ct. 603, 604 (1983). Dr. Ellis testified that the patient's chances for survival would have been better had the valve sutures been repaired several hours earlier. There was no evidence, however, that the time elapsed between the onset of the patient's grave symptoms, the diagnostic procedures, and surgery was made excessive by reason of negligence. Least of all was there evidence that any delay in treating Kearns was attributable to the absence of Dr. Ellis. Such evidence as was admitted on the issue indicated the contrary, i.e., that the chief surgical resident was in telephone contact with Dr. Ellis at around noon of the fatal day and that Dr. Ellis did nothing to alter the course which the team of physicians on the scene had adopted. A contrary conclusion would have to rest on speculation. *McCarthy* v. *Hauck,* 15 Mass. App. Ct. at 609-610.

2. Nine years from the date the declaration was filed went by before the case came to trial. The plaintiff propounded no interrogatories and took no depositions. She presented no expert witnesses. At the conclusion of trial, the plaintiff moved to further amend her complaint by introducing theories of failure by Dr. Ellis to obtain the informed consent of Kearns to his [Dr. Ellis'] departure from Boston; failing to designate a cardiac-thoracic surgeon to act as his surrogate and failing to secure his patient's consent to that substitution; and failing to use reinforcement pads to strengthen the sutures' holding capacity. Passing the question whether any of these asserted failures would constitute unacceptable medical practice, the issues sought to be injected into the case were none of them the consequence of surprising evidence and all were well within the realm of the discoverable. To rebut them would have required expert testimony. The trial judge acted within her discretion in denying the motion to amend. See *Castellucci* v. *United States Fid. & Guar. Co.*, 372 Mass. 288, 291-293 (1977); *Consumers Sav. Bank* v. *Coven*, 8 Mass. App. Ct. 594, 598-599 (1979); *Shaw* v. *Siegel*, 13 Mass. App. Ct. 258, 263-265 (1982).

3. Trial began on September 23, 1981. In responses to the defendant's interrogatories filed by the plaintiff in 1978, she said she would have no expert witnesses. On September 21, 1981, two days before trial, plaintiff's counsel furnished the defendant with the name of an expert he proposed to offer. The trial judge allowed a defense motion to suppress testimony from that expert. There was no error. Under Mass.R.Civ.P. 26(e)(1)(B), 365 Mass. 776 (1974), a "party is under a duty seasonably to supplement his response with respect to . . . the identity of each person expected to be called as an expert witness." Given the long pendency of the case and the response made to the defendant's interrogatory in 1978, the supplementation here was hardly seasonable. Necessarily a court has wide discretion in application of the rule. See *Eagan* v. *Marr Scaffolding Co.*, 14 Mass. App. Ct. 1036 (1982). See generally 8 Wright & Miller, Federal Practice & Procedure § 2050, at 326-328 (1970), commenting on the analogous Federal rule. See also *Davis* v. *Marathon Oil Co.*, 528 F.2d 395, 403 (6th Cir. 1975), cert. denied, 429 U.S. 823 (1976); *Tabatchnick* v. *G. D. Searle & Co.* 67 F.R.D. 49, 55 (D. N.J. 1975). The plaintiff called as her witnesses and placed under direct examination three physicians (Dr. Ashraf, Dr. Rutledge, and Dr. Leland) who had participated in the care of Kearns on the fatal day. None of them was a party to the litigation and none, in response to the defendant's interrogatory, had been identified as an expert witness upon whose opinion the plaintiff expected to rely. During the course of his examination of these doctors, the plaintiff's counsel asked their opinion about aspects of the care accorded Kearns. For the same reason that the judge barred testimony from the expert brought forth at the eleventh hour, she correctly excluded questions addressed to the expert opinions of the three doctors. That reason is that the defendant was entitled to know in advance the identity of the experts the plaintiff proposed to call, the subject

on which each would testify, and the substance of the facts and opinions to which each was expected to testify. See Mass.R.Civ.P. 26(b)(4)(A)(i), 365 Mass. 774 (1974).

4. To the extent errors in jury instructions (except as they may relate to damages) are not academic when a jury returns a verdict in favor of an appellant, there is, in any event, no occasion to consider the appellant's complaints about the charge in this case because they were not brought to the attention of the trial judge. When invited by the trial judge to comment about the charge at side bar, both counsel said they had nothing to add. See *Waltham Truck Equip. Corp.* v. *Massachusetts Equip. Co.*, 7 Mass. App. Ct. 580, 585 (1979).

*Judgment affirmed.*

*James C. Gahan, Jr.* (*John T. Underhill* with him) for the plaintiff.
*Jacob J. Locke* (*Robert G. Conley* with him) for the defendant.