Curtin, J.
Blair Galinsky (“Galinsky”) commenced this G.L.c. 186, §15B action to recover the security deposit he had paid on his rental of a house from David Segal, Trustee of the 39 Deerhaven Realty Trust (“Segal”). The complaint sought statutory treble damages and attorney’s fees. Segal counterclaimed for alleged damage to the property, unpaid water and septic bills, lost rent, and other costs. After a jury-waived trial, judgment was entered for Galinsky. Segal filed this appeal.
The record indicates that on July 11,2005, the parties executed a written lease for Galinsky’s rental of Segal’s single-family house in Lincoln for a one-year term ending July 14, 2006 at a monthly rent of $3,500.00. At the commencement of the term, Galinsky paid the first and last month’s rent, plus a $3,500.00 security deposit. The parties extended the lease for an additional year to July 14, 2007. Galinsky did not vacate the premises until August 14, 2007, and paid use and occupancy for that last month.
Segal claimed in this action that all utilities were to be paid by Galinsky pursuant to paragraph 13 of the lease that required the tenant to pay for “fuel, heat, electricity, gas, telephone and other utilities.” At the outset of the tenancy, however, Segal gave Galinsky a handwritten “welcoming note” that, inter alia, instructed Galinsky to “refer to the landlord” the septic system and water bills. Segal, in fact, paid all water bills, and never submitted a water or septic system bill to Galinsky during his tenancy. Segal had the septic system pumped out only after Galinsky vacated the premises.
On August 30, 2007, Segal signed an itemized list of alleged damages that he intended to deduct from Galinsky’s security deposit. Although Galinsky had vacated the premises more than two weeks earlier and had left a forwarding address with the post office, Segal elected to send his damages list to Galinsky by regular mail addressed to Galinsky at the vacant rental property. Not surprisingly, Galinsky never received it. Further, although Segal’s list was notarized and signed by him under the pains and penalties of peijury, it did not include any evidence, beyond Segal’s unsubstantiated assertions, of the estimated or actual cost of repairing the alleged damage *77 or of the claimed bills.[2] Segal also included with the list two checks for $85.00, representing interest on Galinsky’s last month’s rent and security deposit. As noted, Galinsky never received the mailing.
By letter dated September 13, 2007, Segal sent an “updated” list of damages to Galinsky’s counsel, Attorney Edward Lonergan (“Lonergan”), stating that he still retained Galinsky’s $3,500.00 security deposit and “welcome [d] [Lonergan’s] direction and input on how [he] should apply the security deposit to the outstanding bills for usage, the bills for repairs, and the damages regarding [his] loss of rent.” Again, Segal failed to include any actual evidence substantiating the amounts of the deductions he sought.
Segal leased the house to a new tenant in September, 2007. Only days into that tenancy, the new tenant informed Segal that he had found Galinsky’s missing cat. Galinsky retrieved his cat shortly thereafter. In a subsequent letter to Lonergan, Segal asserted that the cat’s presence in the rental property had extended Galinsky’s tenancy.
After unsuccessful written demands by his attorney in September, 2007 for the return of his security deposit, Galinsky commenced this action on November 5, 2007. Pursuant to G.L.c. 186, §15B(7), the complaint sought treble damages, costs, and attorney’s fees for Segal’s violation of §15B(6) (e) in failing to return Galinsky’s security deposit within 30 days of the end of his tenancy. The complaint also claimed that having failed to comply with the requirements of §15B (4) (iii), Segal was not entitled to take any deductions from the deposit. G.L.c. 186, §15B(6)(b). As noted, Segal counterclaimed for property damage, lost rent, unpaid septic system and water bills, and other alleged costs.
At a January 25, 2008 pretrial conference, the trial court ordered the parties to “exchange documents w[ith] each other to [the] extent they exist” no later than March 17, 2008, and scheduled the case for trial on May 30, 2008.
On April 22, 2008, Galinsky served Segal with requests for admissions. Segal responded on May 16,2008, admitting that (1) Galinsky had vacated the rental property on August 14, 2007; (2) Galinsky had demanded return of the security deposit on September 18, 2007; and (3) Segal had failed to return the security deposit to Galinsky within 30 days after termination of the lease.
On the day of trial, Galinsky’s new counsel, Attorney Leonard A. Frisoli (“Frisoli”), filed a motion in limine to prohibit Segal’s introduction into evidence of the August, 2007 damages list because it had not been received by Galinsky’s counsel before the March 17, 2008 discovery deadline. The trial judge took the motion under advisement, indicating that he would rule on objections to evidence based on the discovery order as the trial progressed. During trial, the court excluded the August, 2007 damages list.
The trial judge found, inter alia, that (1) pursuant to the lease and Segal’s hand *78 written “welcoming note,” Segal was responsible for payment of water and septic system charges; (2) Galinsky had vacated the rental property on August 14, 2007, and Galinsky’s missing cat, later found on the premises, did not extend Galinsky’s tenancy or occupancy; (3) Segal failed to return the $3,500.00 deposit within 30 days after termination of the lease, as required by G.L.c. 186, §15B(4); (4) Segal failed, within the same 30 days, to give Galinsky an itemized list of damages, sworn to and supported by proper documentation, as required by G.L.c. 186, §15B(4) (iii); and (5) at the termination of the tenancy, Galinsky owed no payment of rent or water bills to Segal. Based on these facts, the trial judge concluded that Segal had violated G.L.c. 186, §15B (6) (b) and (6) (e), and, thus, had “forfeit[ed] his right to retain any portion of the security deposit for any reason, or ... to counterclaim for any damage to the premises.” G.L.c. 186, §15B (6). The judge ruled that Galinsky was entitled to recover three times the amount of the security deposit, plus interest, costs, and attorney’s fees, under G.L.C. 186, §15B(7).
Segal moved for reconsideration or a new trial, and both Frisoli and Lonergan filed affidavits for attorney’s fees. After a hearing, the trial court reaffirmed its decision, denied Segal’s motion, and awarded Galinsky $11,710.00 in legal fees. Judgment in favor of Galinsky in the total amount of $22,634.85 (treble damages, interest, costs, and attorneys' fees) was entered on August 27, 2008. The trial court subsequently denied a second motion for reconsideration by Segal.
1. Exclusion of Damages List Contrary to Segal’s initial argument on appeal, there was no prejudicial error in the trial judge’s exclusion at trial of Segal’s August, 2007 purported damages list as a sanction for his failure to furnish it to Galinsky before the discovery deadline.[3]
A trial judge enjoys substantial latitude in pretrial and trial management, including the scope and timing of discovery, the granting of motions in limine, and the admission or exclusion of evidence generally. Mazzoleni v. Cotton, 33 Mass. App. Ct. 147, 150-151 (1992). That discretion is abused only when an order or ruling is “characterized by arbitrary determination, capricious disposition, whimsical thinking, or idiosyncratic choice.” Greenleaf v. Massachusetts Bay Transp. Auth., 22 Mass. App. Ct. 426, 429 (1986). The exclusion of Segal’s damages list in this case was well within the express authority granted to the trial judge by Mass. R. Civ. E, Rule 37(b)(2)(B), to enter “[a]n order ... prohibiting [the disobedient party] from introducing designated matters in evidence” as a sanction for violating discovery orders. See generally Kearns v. Ellis, 18 Mass. App. Ct. 923, 924-925 (1984). And the propriety of that sanction did not depend, as Segal suggests, on a determination that Galinsky had been prejudiced by Segal’s postdeadline production of the list. 'The absence of prejudice to [the opposing party] due to noncompliance, even if true, did *79 not make the sanction imposed unreasonable.” Eagle Fund, Ltd. v. Sarkans, 63 Mass. App. Ct. 79, 86 (2005). See also Roxse Homes Ltd. Partnership v. Roxse Homes, Inc., 399 Mass. 401, 406 (1987).
Our conclusion is not altered by Segal’s additional argument that the exclusion of his damages list was unfair because the court admitted into evidence two documents that were not produced by Galinsky until after the March 17, 2008 discovery deadline, namely, Segal’s handwritten “welcoming note,” and his answers to requests for admissions.[4] Segal never moved to quash, or for a protective order, when Galinsky’s requests for admissions were served on him more than a month after the expiration of the time for discovery. Further, Segal did not object to Galinsky’s evidence when it was admitted at trial, and never filed a motion to strike. Thus, the short answer to Segal’s argument is that he waived any objection to the trial court’s admission of the “welcoming note” or his answers to requests for admissions. Johanson v. Aldridge, 1999 Mass. App. Div. 182, 183, citing, inter alia, Vassallo v. Baxter Healthcare Corp., 428 Mass. 1, 12 (1998).[5]
But even assuming arguendo that in excluding Segal’s damages list, the trial judge acted unfairly or exceeded what could be deemed a reasonable Rule 37 (b) (2) (B) sanction, conclusions with which we disagree, there would still be no reversible error in the judge’s evidentiary ruling. The reason is that Segal’s damages list was fatally defective under G.L.c. 186, §15B(4) (iii). Thus, even if admitted into evidence, the list would not have permitted the deductions from Galinsky’s security deposit sought by Segal. As Segal cannot, therefore, demonstrate that the excluded list “would ... have made a material difference in the outcome of the trial,” WHIR Real Estate Ltd. Partnership v. Venture Distrib., Inc., 63 Mass. App. Ct. 229, 234 (2005), or that the “trier of fact might have reached a different result if the evidence had been before it,” id. at 234-236 quoting DeJesus v. Yogel, 404 Mass. 44, 49 (1989), there was no prejudicial error. See Cohen v. Liberty Mut. Ins. Co., 41 Mass. App. Ct. 748, 752 (1996).
To deduct for repairs of damage to the rental property by the tenant, the landlord must provide the tenant within 30 days of lease termination
an itemized list of damages, sworn to by the lessor ... under the pains and penalties of perjury, itemizing in precise detail the nature of the damage and of the repairs necessary to correct such damage, and written evidence, such as estimates, bills, invoices or receipts, indicating the actual or estimated cost thereof.
G.L.c. 186, §15B(4) (iii). A landlord who fails to comply with §15B(4) (iii) “shall for *80 feit his right to retain any portion of the security deposit for any reason.” G.L.c. 186, §15B(6)(b). Several of the “damages” items on Segal’s list related to lost rental income and additional realtor fees associated with the rental of the house, and were clearly not damages for repairs to the house. Segal failed to itemize the amount for “water usage for two years,” or to attach any bills or receipts for this item. Segal’s list also omitted any substantiation in “precise detail” of his claims for damage to the walls, carpet cleaning, locksmith charges, washer/dryer repair, or stolen bookcases, or any written evidence that these repairs were done, or that he had obtained estimates for said repairs. See Carter v. Seto, 2005 Mass. App. Div. 62, 66. As Segal was precluded from any security deposit deductions because his list of damages failed to comply with statutory requirements as a matter of law, we can conclude with “substantial confidence” that the exclusion of that list from evidence would not have made a “material difference” in the decision in this case. Brusard v. O’Toole, 45 Mass. App. Ct. 288, 292 (1998), quoting DeJesus, supra at 48-49.
2. Treble Damages and Attorneys’ Fees There is also no merit in Segal’s argument that if the trial court had not excluded his damages list, he would not have been found liable under G.L.c. 186, §15B(6), and would not have been assessed treble damages under G.L.c. 186, §15B(7). Section 15B (7) states: “If the lessor ... fails to comply with clauses (a), (d), or (e) of subsection 6, the tenant shall be awarded damages in an amount equal to three times the amount of such security deposit or balance thereof to which the tenant is entitled. ...” Section 15B(6) (e) governs the failure by the landlord “to return to the tenant the security deposit or balance thereof to which the tenant is entitled after deducting therefrom any sums in accordance with the provisions of this section, together with any interest thereon, within thirty days after termination of the tenancy.” It was Segal’s failure to make a timely return of the security deposit, or any balance due on it, within 30 days that triggered the treble damages penalty of G.L.c. 186, §15B(7); the admission of his damages list would not have altered that statutorily prescribed outcome. See M.J. Realty Trust II v. Dinnocenzo, 2005 Mass. App. Div. 35, 38.
Contrary to Segal’s final argument, the attorneys’ fees awarded by the trial court were not unreasonable or excessive merely because they exceeded the amount of the $3,500.00 security deposit. “What constitutes a reasonable fee is a question committed to the sound discretion of the judge.” Berman v. Linnane, 434 Mass. 301, 302-303 (2001). In this case, the trial judge explicitly noted his utilization of the factors set forth in Linthicum v. Archambault, 379 Mass. 381 (1979) and Matter of Fordham, 423 Mass. 481 (1996) in reviewing Galinsky’s attorneys’ requests for fees and their supporting affidavits. He found that “the dispute was not so complex, so as to require [Galinsky] to have 2 attorneys working simultaneously on the matter,” and excluded duplicate time as well as time devoted to a real estate attachment request. The judge then reduced the hours submitted by each attorney, and assessed fees based on those hours and the attorneys’ respective and reasonable hourly rates. There was no abuse of discretion in the court’s calculation or award of attorneys’ fees.
Judgment affirmed.
So ordered.

 For example, Segal merely stated that repair of the wall damage would cost $500.00, and that he had spent $370.00 on “septic tank pump out and disposal.” Segal also claimed that he had previously submitted a bill to Galinsky’s counsel, Attorney Lonergan, for “water usage for two years.” However, the alleged submission was not included in the record.

 There is no question that Segal did not comply with that deadline. Segal’s counsel admitted that he had delayed forwarding the damages list to Frisoli, Galinsky’s attorney, until two weeks before the May 30, 2008 trial date. Nor does Segal’s trial testimony support his argument on this appeal that he forwarded the damages list in August, 2007 to Lonergan, Galinsky’s initial attorney. After recounting earlier unpleasant interactions with Lonergan, Segal testified: “I had no ongoing dialog with Attorney Lonagan [sic]. And then uh — so I did not send him a copy of [the list].”

 Frisoli did not produce the “welcoming note” until trial. Requests for admissions were served on Segal in April, 2008, and he answered those requests in May, 2008.

 And Segal could not raise these arguments for the first time in a motion for a new trial or for reconsideration. See Commissioner of Revenue v. Comcast Corp., 453 Mass. 293, 312 (2009), citing Publishers Resource, Inc. v. Walker-Davis Publ., Inc., 762 F.2d 557, 561 (7th Cir. 1985) (motion for reconsideration should not serve as occasion to tender new legal theories for first time); O’Donnell v. Bane, 385 Mass. 114, 121 (1982) (“A judge is not required to consider on a new trial motion a question of law that could have been raised during the trial.”).